IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THOMAS CHAVERS, SANDRA PORTZER, BRAZOS VALLEY CARRIAGE COMPANY, L.P., ALL AMERICAN ROADRUNNERS, L.P., and BRAZOS VALLEY ROADRUNNERS, L.P. <br><br> Plaintiffs, <br><br> vs. <br><br> TYRONE MORROW; MICHAEL IKNER; THE CITY OF BRYAN, TEXAS; THE CITY OF COLLEGE STATION, TEXAS; BRAZOS COUNTY, TEXAS; CHRISTOPHER KIRK; GLENN BROWN; DAVID WATKINS; SCOTT HINES; KARLA WIESEPAPE; RACHEL FALWELL; WALTER SAYERS, and PETER GLIDEWELL, <br><br> Defendants | Case No. 10-3922 |

## ORIGINAL COMPLAINT

Plaintiffs, on information and belief, allege and state the following:

1. This Court has jurisdiction insofar as Plaintiffs bring claims against the Defendants under 42 U.S.C. § 1983 and 18 U.S.C. § 1964.

2. Venue is proper insofar as all Defendants are located in or reside in the Houston Division of the Southern District of Texas.

### Parties

3. Plaintiff Thomas Chavers is a resident of Brazos County, Texas. He is a tow truck operator and an officer of Brazos Valley Carriage Company, L.P., All-American Roadrunners, L.P., and Brazos Valley Roadrunners, L.P. (collectively "Roadrunner Plaintiffs").

4. Plaintiff Sandra Portzer is a resident of Brazos County, Texas. She is an officer of each of the Roadrunner Plaintiffs.

5. Plaintiff Brazos Valley Carriage Company, L.P. is a limited liability company organized under the laws of the State of Texas. It is a tow-truck business in Brazos County, Texas.

6. Plaintiff All American Roadrunners, L.P. is a limited partnership organized under the laws of the State of Texas. It is a tow-truck business in Brazos County, Texas.

7. Plaintiff Brazos Valley Roadrunners, L.P. is a limited partnership organized under the laws of the State of Texas. It is a tow-truck business in Brazos County, Texas.

8. Defendant Tyrone Morrow is the former chief of police for the City of Bryan, Texas.

9. Defendant Michael Ikner is the former chief of police for the City of College Station, Texas.

10. Defendant City of Bryan is a municipal corporation organized under the laws of the State of Texas.

11. Defendant City of College Station is a municipal corporation organized under the laws of the State of Texas.

12. Defendant Brazos County is a political subdivision of the State of Texas.

13. Defendant Christopher Kirk is the sheriff of Defendant Brazos County, Texas.

14. Defendant Glenn Brown is the former city manager of Defendant City of College Station.

15. Defendant David Watkins is the former city manager of Defendant City of Bryan.

16. Defendant Scott Hines is a sergeant in the sheriff's department of Defendant

Brazos County, Texas.

17. Defendant Karla Wiesepape is a police officer for Defendant City of College Station.

18. Defendant Rachel Falwell is a former police officer for Defendant City of College Station.

19. Defendant Walter Sayers is a police officer for Defendant City of College Station.

20. Defendant Peter Glidewell is a deputy constable for Precinct 2 of Defendant Brazos County, Texas.

21. Defendant Jeffrey Winney is a police officer for Defendant City of College Station.

22. Defendant Randall Hall is a police officer for Defendant City of Bryan.

23. Defendant Kalinec Towing Company, Inc. is a Texas corporation otherwise known as A-1 Towing Service.

24. Defendant Kalinec Leasing Company, Inc. is a Texas corporation that is also a part of A-1 Towing Service.

25. Defendant Myrna Sue Kalinec is an officer and owner of Kalinec Towing Company, Inc. and Kalinec Leasing Company, Inc., collectively referred to hereinafter as "A-1 Towing Services" or "A-1."

## Factual Allegations

26. The Cities of Bryan and College Station maintain towing rotation lists whereby local towing companies are called as needed by law enforcement. If an officer requests that a vehicle be towed, dispatchers are supposed to rotate through the lists consecutively, thereby allocating work evenly among the local towing companies. Brazos County uses the towing

rotation list maintained by the City of Bryan.

27. The municipal ordinances of the City of Bryan and City of College Station regulate tow-truck operations extensively. These ordinances, however, allow city officials to remove tow-truck operators without notice and without a hearing.

28. The Roadrunner Plaintiffs applied to be on the City of Bryan and City of College Station towing rotation lists and were approved in 2005. Since then, each of the Roadrunner Plaintiffs have reapplied each year and paid a $200 fee to remain on the rotation lists.

29. A-1 Towing Service ("A-1") has long been the largest towing company in Brazos County, and it is perhaps the oldest towing company in Brazos County. The Plaintiffs have learned from former employees of A-1 that A-1 provided barbecues and other gratuities to local law enforcement officers, and these officers reciprocated by circumventing the rotation list and steering business directly to A-1. The Plaintiffs have learned from customers that local law enforcement officers will report that the customers requested A-1 when, in fact, they did not request A-1.

30. On February 21, 2008, for example, a driver involved in an accident near the Post Oak Mall in College Station requested that the Roadrunner Plaintiffs tow her vehicle. The police officer on scene told the driver that Defendant A-1 was "around the corner" and it needed to make the tow because her car was in the road and obstructing traffic. The driver argued with the officer, and explained that her vehicle was not obstructing traffic. When Plaintiff Chavers arrived to make the tow, he was told by the investigating officer, Defendant Winney, that both drivers had requested Defendant A-1. In fact, Defendant Winney had requested Defendant A-1 outside the rotation schedule and contrary to the wishes of the Plaintiffs' client.

31. On March 5, 2008, Steve Duke, a driver for the Roadrunner Plaintiffs, was

indirectly involved in an accident while towing a pick-up truck. While towing the truck, a bed cover flew off the truck and hit a vehicle following the wrecker. Defendant Glidewell arrived at the scene almost immediately and took charge. Shortly thereafter, Plaintiff Chavers arrived at the scene and exchanged insurance information with Ms. Davis, the driver of the wrecked vehicle. She asked where she could take her vehicle to for repairs and Mr. Duke suggested Sterling Auto Group. Ms. Davis then asked the Roadrunners Plaintiffs to tow her vehicle there when the Bryan police and fire departments were finished with the accident scene. However, when a fire department lieutenant overheard this conversation, he informed Ms. Davis and Plaintiff Chavers that Defendant Glidewell had already asked his dispatchers to send an A-1 wrecker "by request." The lieutenant then asked Ms. Davis directly if she had requested A-1 and she said, "No". When Defendant Glidewell was informed that Ms. Davis wanted Roadrunners to tow her vehicle, he replied "Ma'am, you said you wanted to go to Sterling, and Sterling uses A-1." Plaintiff Chavers protested that any company could tow into Sterling, but Defendant Glidewell refused to cancel A-1 and Ms. Davis acquiesced because she did not feel well.

32.    On May 7, 2008, Brazos Valley Roadrunners received a rotation call from the College Station Police Department. Just as a Brazos Valley Roadrunners driver arrived on the scene, the police dispatcher canceled the assignment. The dispatcher said, "Officer Sayers requested A-1 because A-1 caused the accident and will pick up the vehicle." When Plaintiff Chavers talked with Defendant Sayers at the scene, Defendant Sayers claimed he had found a red piece of metal near the scene and concluded that it belonged to an A-1 wrecker. Plaintiff Chavers noted there were no markings on the piece of metal, and several wrecker companies had red trucks. Defendant Sayers insisted that A-1 had caused the accident, and he said he called A-1 for that reason. The College Station Police Department has no written policy allowing

wreckers to tow vehicles outside the rotation list simply because a piece of equipment from one of their trucks may have contributed to an accident.

33. On November 6, 2008, the day after *Chavers v. Morrow*, Case No. 08-cv-3286 (S.D. Tex.)(hereinafter "*Chavers I*"), was originally filed, a client of the Roadrunner Plaintiffs asked the Bryan Police Department to have Roadrunners tow his vehicle from a location near F.M. 2818 and Beck Street in Bryan. A Bryan police dispatcher relayed this to Roadrunners, and driver Michael Gimeson was dispatched to the scene. Upon Mr. Gimeson's arrival, a Bryan police officer told him to leave the scene per the orders of his chief, *i.e.*, Defendant Morrow. Another company was called from the rotation list to pick up the vehicle belonging to the Roadrunners client. Ten minutes later, Dusty Perry was involved in an accident on Highway 6 in Bryan near the intersection of F.M. 2818. Defendant Hall asked Mr. Perry if he had a preference for wreckers, and Mr. Perry told him he preferred to use Roadrunners. Defendant Hall responded that because the Roadrunner Plaintiffs were not on the rotation list, Mr. Perry could not use their services. Thereafter, Defendant Hall apparently told his dispatchers that Mr. Perry had requested A-1, because A-1 was dispatched even though it was not next on the rotation list (A-1 comes before Big Red on the list). A-1 charged Mr. Perry approximately $225.00, far more than the $100.00 allowed by city ordinance.

34. Officers from the defendant agencies have, on numerous other occasions, steered business to A-1 for other absurd or non-existent reasons.

35. Defendant Wiesepape formerly supervised the rotation list for Defendant City of College Station, and Defendant Falwell formerly assisted her. These Defendants interfered with the Plaintiffs' private business accounts by instigating criminal investigations of civil incidents, thereby harassing the private clients and causing them to cease doing business with the

Roadrunner Plaintiffs. In January of 2008, Defendant Wiesepape tried to dissuade a private client from using the Roadrunner Plaintiffs. After this *Chavers I* was filed, Defendant Wiesepape began harassing another of the Plaintiffs' private clients, falsely claiming that the Plaintiffs' signs were not properly posted.

36. At various times prior to the filing of *Chavers I*, Plaintiffs Chavers and Portzer called and wrote Defendant Kirk, various constables, the chiefs of police for Bryan and College Station, city council members, and the Texas Attorney General regarding local law enforcement officers steering business to A-1. This prompted the Defendants to retaliate. The Plaintiffs also asked both cities to identify the officers who most frequently reported that customers requested A-1, but the cities refused to provide this information. Afterward, the Defendants began retaliating against the Plaintiffs.

37. The Plaintiffs later learned that the City of Bryan granted exclusive contracts to A-1 for all tows to the city impound lot. In 2005-2006, A-1 Towing Service was awarded a no-bid annual contract worth more than $22,000 to perform tows for the City of Bryan that was never posted for bidding. City policy requires that contracts in excess of $5,000 be posted. A-1 continued making all tows until July of 2008, when the contract was awarded again without notice or posting. Plaintiff Brazos Valley Roadrunners, L.P. is a HUB-certified business, it is listed on the city's bidders list, and it should have been offered an opportunity to bid on the contract. A-1's listed contract rates are higher than the Plaintiffs' rates for the same services, and the Plaintiffs would reasonably have expected to win the contracts had they been allowed to bid on them.

38. Bryan police officers routinely impound vehicles in the City of Bryan's impound yard when the vehicles have been involved in a fatal or possibly fatal accident. A-1 is always

requested by the police to make these tows, regardless of where A-1 is on rotation or whether another wrecker company has been requested. A-1 has had a contract from time to time with the City of Bryan to tow abandoned vehicles and City of Bryan fleet vehicles, but there is nothing in those contracts related to towing privately owned vehicles involved in accidents, nor is there any wording in those contracts stating that A-1 has exclusive rights to be in the city impound yard. Nevertheless, the City of Bryan once paid A-1 $55.00 just to move a vehicle out of their yard and onto the street for Roadrunners to pick up with the excuse that, by contract, no one but A-1 is allowed in the yard. There is no such contract and no reason why any wrecker company called by rotation could not tow into or out of Bryan's impound yard just as well as A-1.

39. Towing lots are no strangers to controversy, as vehicle owners are often angry that their vehicles have been towed. When the Plaintiffs first opened for business, they regularly called the Brazos County Sheriff's Office when customers made threats or criminal accusations. Sheriff's deputies filed numerous reports about the Plaintiffs, and in early September of 2008 the Plaintiffs learned from a document produced by Defendant Hines that deputies were actively attempting to get the Plaintiffs removed from the rotation list. As a result, on September 11, 2008, the Plaintiffs spent more than $5,000 installing cameras and microphones to avoid any uncertainty over what was said or what happened on their property. Interestingly, the sheriff's office has filed few reports, if any, since the equipment was installed.

40. The Plaintiffs allege that Defendant Hines was acting at the direction of Defendant Kirk, a close friend of Defendant Sue Kalinec and the late "Doc" Kalinec, the owner and a former co-owner, respectively, of A-1. The Plaintiffs further allege that Defendant Kirk enlisted his deputies and Defendants Morrow and Ikner in his plan to drive the Roadrunner Plaintiffs out of business.

41.     On October 28, 2008, at Sheriff Kirk's request, Defendant Morrow sent a letter to Plaintiff Chavers stating that the Roadrunner Plaintiffs had been suspended indefinitely "due to numerous complaints of criminal activity allegedly committed by employees of those businesses." Defendant Morrow listed nine case reports from the Brazos County Sheriff's Office. Of those reports, one was a falsification of an existing report, and two were civil complaints, *i.e.*, matters that were not pursued criminally. Two of the reports alleged criminal activity by customers *against* the Roadrunner Plaintiffs or their employees, and in another report the investigating officer plainly wrote that the facts did not meet the elements of a criminal offense. Moreover, at the time Defendant Morrow wrote the letter, no employee of the Roadrunner Plaintiffs had been charged with, much less convicted of, any crime based on the reports.

42.     In his letter, Defendant Morrow falsely claimed that Case No. 08-8393 related to a "Threat with shotgun committed by Thomas Chavers." In fact, someone else was accused of making threats with a shotgun. Defendant Morrow further wrote, "The continued business relationship between the City of Bryan and your towing companies places the citizens of Bryan at risk." This statement also was false, and Defendant Morrow knew it was false or did not care whether it was false. None of the complaints arose from rotation-list tows, and the Plaintiffs remained free to make private tows, so the removal of the Plaintiffs from the rotation list had nothing to do with public safety.

43.     Plaintiffs' Counsel requested a meeting with Defendant Morrow to discuss the Plaintiffs' removal from the rotation list, and Defendant Morrow scheduled a meeting for 1 p.m. on Monday, November 3, 2008. Plaintiffs' Counsel informed City of Bryan officials that neither Mr. Chavers nor any other Roadrunners employee had been arrested or charged with any offense

based on the reports he cited. Plaintiffs' Counsel further informed city officials that Defendant Morrow had violated state and federal law by removing the Roadrunners Plaintiffs from the rotation list.

44.     On the evening of October 30, 2008, shortly after Plaintiffs' Counsel notified the City of Bryan that Mr. Chavers had never been charged with a crime, Brazos County Sheriff's deputies arrested Mr. Chavers for an assault that allegedly occurred in July of 2008. The Sheriff's office previously had shown no interest in pursuing the case. On information and belief, the sheriff's office sought an arrest warrant at the behest of Defendant Morrow in an effort to provide "cover" for Defendant Morrow's illegal acts.

45.     During the morning of October 31, 2008, Plaintiffs' Counsel sent a letter to Defendant Morrow explaining that he had violated the Constitutional due process rights of the Roadrunners Plaintiffs by removing them from the wrecker rotation list without notice or a hearing. That afternoon, Plaintiffs' Counsel sent a letter to Defendant Watkins, the city council and the mayor of the City of Bryan informing them of Defendant Morrow's unlawful acts. The letter further informed the city officials that they had a supervisory duty to stop Defendant Morrow's unlawful acts.

46.     During the morning of November 3, 2008, Officer Rachel Falwell of the College Station Police Department began investigating a claim that the Plaintiffs towed a car without the owner's consent. Under normal circumstances, local law enforcement would treat such an allegation as a civil matter rather than a criminal matter. Moreover, the incident occurred more than two weeks before Officer Falwell began investigating. On information and belief, Officer Falwell initiated the investigation at the behest of Defendant Morrow in an effort to provide "cover" for Defendant Morrow's illegal acts.

47.     At approximately 1 p.m. on November 3, 2008, Plaintiffs Chavers and Portzer arrived at the Bryan police headquarters for their meeting with Defendant Morrow. Unbeknownst to the Plaintiffs, Defendant Morrow had summoned Officer Falwell as well as Officer Wiesepape of the College Station Police Department and Sergeant Scott Hines of the Brazos County Sheriff's Department for a "pre-meeting" in his conference room.

48.     Mr. Chavers, Ms. Portzer, and Plaintiffs' Counsel were invited into the conference room at approximately 1:30 p.m.  Defendant Morrow was pompous and arrogant from the outset, informing Mr. Chavers and Ms. Portzer that the Roadrunners Plaintiffs' presence on the wrecker rotation list was "a privilege that I give to the individuals" on the list.  Chief Morrow further stated that wrecker drivers are his "agents," and "[w]hen they're continually getting involved in discord when they're acting as my agent, I don't need them."  The City's ordinances say nothing about wrecker drivers working as "agents" of the City, much less the chief of police, and the ordinances do not give the chief of police authority to remove drivers at his whim (nor does the Due Process Clause countenance such arbitrariness).  Plaintiffs' Counsel informed Defendant Morrow that if the Plaintiffs were not returned to the wrecker rotation list immediately, they would seek a temporary restraining order from this Court.  Defendant Morrow did not respond.

49.     Defendant Morrow again became arrogant when asked why officers from other agencies had been invited to the meeting. When first asked why the other agencies were present, Defendant Morrow said, "Because I want them here." When Plaintiff's Counsel asked why he wanted them at the meeting, Defendant Morrow said, "Because I asked them to be here." When Plaintiffs' Counsel asked Defendant Morrow why he asked them to be at the meeting, Defendant Morrow said, "Because I can."

50. In light of the fact that Defendant Morrow claimed to be removing the Roadrunners Plaintiffs from the wrecker rotation list due to alleged criminal activity, Plaintiffs' Counsel asked Defendant Morrow whether he had done any research on the drivers of any other wrecker companies. Before Defendant Morrow could answer the question, Assistant Bryan Police Chief Wayland Rawls interrupted, "Chief, based on this threat, I believe this meeting is over." Mr. Rawls never identified the "threat" to which he was referring. Afterward, Officer Wiesepape handed Ms. Portzer a pre-signed letter from Defendant Ikner in which Defendant Ikner stated that the Roadrunners Plaintiffs were being removed from the wrecker rotation list.

51. A quick review of local courthouse records revealed that at least two of A-1's drivers, Terry Lott and Deshawn Johnson, have extensive criminal records, Lott having been convicted of two felonies. On information and belief, none of the Defendants has conducted investigations of other trucking companies comparable to their investigations of the Roadrunner Plaintiffs. Specifically, prior to the filing of *Chavers I*, the Defendants did not investigate the criminal backgrounds of other drivers as they did Plaintiff Chavers.

52. After the meeting with Defendant Morrow on the afternoon of November 3, 2008, Plaintiffs' Counsel sent a letter to the Brazos County Sheriff, the Brazos County Attorney, and the city manager, city council, and mayor of the City of College Station stating that city and county officials appeared to have colluded with Defendant Morrow to try to retroactively justify his illegal acts. Plaintiffs' Counsel explained that Defendant Ikner had violated the Constitutional due process rights of the Roadrunners Plaintiffs. Plaintiffs' Counsel further explained that the city manager, city council and mayor had a supervisory duty to stop Defendant Ikner's illegal acts.

53. After *Chavers I* was filed, Defendants City of Bryan and City of College Station

changed their story and said the Roadrunner Plaintiffs were excluded from the rotation lists because the Plaintiffs were not properly licensed to operate tow trucks. They made this claim even though many of the Plaintiffs' competitors on the rotation lists (*e.g.*, Defendant Kalinec) did not and do not possess the incident management licenses that these defendants claim are necessary, yet these competitors have been permitted to remain on the lists. Even after the Plaintiffs proved that they possessed all necessary licenses, the Defendants City of Bryan and City of College Station refused to return the Roadrunner Plaintiffs to the rotation list, citing the pendency of *Chavers I*. In other words, the Defendant cities' original reasons for removing the Roadrunner Plaintiffs from the rotation lists have been abandoned or refuted, but they continue to exclude the Roadrunner Plaintiffs from the rotation list in retaliation for filing and prosecuting *Chavers I*. In the presence of Bryan City Attorney Janice Hampton, the attorney for Defendant Morrow told Plaintiffs' Counsel in early 2009 that the Plaintiffs would have to drop *Chavers I* before they would be allowed back on the rotation list.

56. Further discovery will likely reveal that Defendant Kalinec actively worked with the other Defendants to unlawfully steer business to A-1, thereby harming the Roadrunner Plaintiffs.

### Claims

*Count One: 15 U.S.C. §§ 15 and 26 (Antitrust)*

58. All previous paragraphs are incorporated herein by reference.

59. The Defendants either engaged in or conspired with others to participate in violations of state and federal antitrust law, and the Plaintiffs assert claims for damages for violations of *15 U.S.C. § 15*. The Plaintiffs are further entitled to injunctive relief pursuant to *15 U.S.C. § 26*.

*Count Two: Tortious Interference*

65. All previous paragraphs are incorporated herein by reference.

66. Defendants Kalinec, Kalinec Towing Company, and Kalinec Leasing Company are liable to the Plaintiffs for tortious interference with business relationships.

*Count Three: Civil Conspiracy*

76. All previous paragraphs are incorporated herein by reference.

77. The Defendants participated in a civil conspiracy.

## Request for Relief

Wherefore, the Plaintiffs request that this Court:

    a.    Award compensatory damages against the Defendants;

    b.    Award punitive damages against the individual and non-governmental Defendants;

    c.    Award treble damages against the Defendants;

    d.    Award costs of this action to the Plaintiffs;

    e.    Award reasonable attorney fees and costs to the Plaintiffs;

    f.    Award all other relief to which the Plaintiffs are entitled, including declaratory and equitable relief.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
SDTX Bar No. 727184
YOUNGKIN & BURNS
PO BOX 4806
Bryan, Texas 77805
Phone: (979) 776-1325
Fax:    (979) 776-1315

ATTORNEYS FOR PLAINTIFFS

JURY TRIAL DEMANDED